**SIGNED THIS: October 15, 2026**



**Peter W. Henderson**
**Chief United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| **In re:** | |
| **CRYSTAL HOPE VARNER,** | **Case No. 26-80307** |
| **Debtor.** | |

## OPINION

Crystal Varner scheduled GM Financial as a creditor in her Chapter 13 bankruptcy case. The Bankruptcy Noticing Center sent electronic notice of Varner's filing to GM Financial. But no person at GM Financial learned of the bankruptcy filing due to a technical oversight in its automation. Varner's account was not flagged as being in bankruptcy, and GM Financial repossessed her car two months later. Varner now moves for sanctions for a violation of the automatic stay. 11 U.S.C. §362(k).

The motion will be denied. GM Financial violated the automatic stay. It did not do so willfully, however, and only willful violations lead to liability under §362(k). Willfulness requires actual knowledge of a pending bankruptcy case, and GM Financial did not know that Varner was in bankruptcy when it repossessed her car.

# I

The Court held an evidentiary hearing on the motion for sanctions. Two witnesses testified: Crystal Varner, the Debtor, and Aaron Rangel, the Vice President of Bankruptcy and Loss Mitigation at GM Financial. I make the following findings of fact based upon their testimony and the bankruptcy case docket.

Varner financed the purchase of a 2018 Dodge Charger from a car dealer in Valparaiso, Indiana, through GM Financial in October 2022. Varner, a traveling nurse who lives in western Illinois, put nearly 100,000 miles on the car over the next three and a half years. She fell behind on payments on the loan, though, and made her last payment in March 2025. To save the car from repossession, she filed a barebones Chapter 13 petition on April 13, 2026. She listed GM Financial as a creditor on schedules filed two weeks later. The Court prepared a Notice of Chapter 13 Bankruptcy Case (Official Form 309I) and used the Bankruptcy Noticing Center (BNC) to send the notice to all creditors. The BNC certified that it sent notice by electronic transmission to GM Financial in Electronic Data Interchange (EDI) format:

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| 7577818 | + EDI: PHINAMERI.COM | Apr 30 2026 23:26:00 | GM Financial, PO Box 181145, Arlington, TX 76096-1145 |

Nothing was wrong with the notice, but no individual at GM Financial ever saw it.

GM Financial is a large, sophisticated creditor. It has a dedicated bankruptcy department with forty employees whom Rangel supervises. GM Financial automates the receipt and processing of electronic notices from the BNC through what it refers to as "Phin." GM Financial also automates the maintenance of an account list, which it provides to Phin, that comprises its entire portfolio of outstanding loans. When the BNC sends GM Financial an electronic notice that a bankruptcy case has been filed, as it did in this case, Phin identifies whether the case information in the notice is a complete match or a partial match to a customer in the account portfolio. If there is a complete match, Phin automatically creates a record in GM Financial's system flagging the account as subject to bankruptcy. If there is only a partial match, Phin creates a record for manual review by GM Financial's bankruptcy department. Manual reviews are completed within one business day. Once a customer's account has been flagged, either through the automated or manual process, it is taken out of GM Financial's normal account handling system, and only the bankruptcy department works on that customer's account from that point on. The staff of the bankruptcy department is trained to stop collection activity and otherwise to comply with bankruptcy law.

Due to an oversight in GM Financial's automated system, Varner's account was not included in the portfolio of open accounts available to Phin on April 30, 2026. When the BNC sent notice to Phin, therefore, Phin concluded that the information was neither a complete match nor a partial match to a GM Financial account, so no record of bankruptcy was created or forwarded for manual review. The BNC notice just sat in the Phin system. Varner's account was not flagged, and GM Financial was not otherwise told that Varner was in bankruptcy. After Varner's car was later repossessed, and the motion for sanctions filed, GM Financial investigated the reason behind the mistake and concluded that a programming error was to blame. I find that conclusion to be more likely true than not.

Here's what happened: on July 28, 2025—a year before the bankruptcy case—Varner attempted to pay off the loan by making a $17,347.56 payment on an outstanding principal balance of $18,030.42. The payoff was reversed (for reasons that are unexplained), but Varner tried again on August 8, 2025, this time tendering the full $18,030.42. The payoff was recorded and the principal balance reduced to $0.00. As before, however, the payoff was quickly reversed and the outstanding balance restored.

Generally, when a loan is paid off, it is automatically removed from the portfolio of active accounts that Phin sees. When Varner's payoff was recorded, her account was taken off of the Phin list. But when the payoff was reversed, the account was not automatically put back on the list, even though it should have been. Apparently no other event between then and April 2026 gave a reason for the system to add Varner's account back to the list. GM Financial did not intend for a reversed payoff to result in the exclusion of a customer's account from the Phin list. Rangel has never seen that error occur in his nearly thirty years with the company. GM Financial believes it has identified the programming issue and is working on a solution to what is now a known problem.

Unfortunately, because of the automation mistake, GM Financial ended up directing a towing company to repossess the Charger in June 2026, thus violating the automatic stay of 11 U.S.C. §362(a). Though Varner lives five hours away, in Illinois, she was in Valparaiso visiting her boyfriend, so when the car was repossessed in the early morning of Wednesday, June 17, she was left stranded in Indiana. Varner did not notice that her car was missing until later that afternoon. She contacted her attorney, who in turn called GM Financial. Customer service informed the attorney that the bankruptcy department was closed for the day but that he should call back the next day at 8:00 a.m. When he did so, the bankruptcy department immediately flagged Varner's account and tried to get in touch with the towing company to return her car. The towing company several times did not pick up the phone, but at some point it learned of the direction to

return the car. Varner was told by the towing company on Thursday that the car could not be returned before 11:00 p.m. because no one was available. When the car had not been returned by noon on Friday, Varner filed an emergency motion for turnover of the car. The motion was later withdrawn before the Court could hear it (the Court was closed for Juneteenth) because the car was finally returned late Friday afternoon. The turnover motion played no role in GM Financial's decision to return the car, and I do not infer that it hastened the towing company's response either.

Varner was understandably distressed by a situation she should not have had to endure and for which she bore no blame. The towing company was rude to her and appeared to be dragging its feet. Varner also lost the opportunity to secure a renewable 13-week contract that would have paid $2,100 per week and provided health benefits. As a traveling nurse, Varner contracts with prisons in Illinois to provide nursing services. She had scheduled a meeting at Logan Correctional Center, located in Lincoln, Illinois, for that Friday. The meeting involved an in-person physical, which Varner expected to pass. As the hours went by without the return of her car on Thursday, she called Logan, explained that she did not have access to her car, and asked that their in-person meeting be rescheduled. (Lincoln is more than three hours from Valparaiso by car.) Likely concerned that Varner would not have reliable transportation, the prison declined to reschedule and told her it would find someone more suitable. Since then, Varner has continued to pick up shifts as a traveling nurse as she works to obtain a similar contract with Dixon Correctional Center. The commute to Dixon would require a significantly longer drive (an additional 60 miles) from her home than the commute to Logan would have been.

Varner argues that she is entitled to $15,000 in compensatory damages for the lost work in addition to $30,000 in punitive damages and nearly $10,000 in attorneys' fees. GM Financial, on the other hand, argues that its violation of the stay was not willful, so no damages may be awarded. The Court has jurisdiction to resolve the dispute. 28 U.S.C. §1334(b); 28 U.S.C. §157(a), (b); ILCD L.R. 40.2(A).

## II

A bankruptcy petition automatically operates as a stay of efforts to collect from the debtor outside of the bankruptcy forum. *City of Chicago v. Fulton*, 592 U.S. 154, 157 (2021); 11 U.S.C. §362(a). Repossessing a car that belongs to the bankruptcy estate and that secures a prepetition debt of the debtor is a paradigmatic violation of the automatic stay. *Matter of Kuehn*, 563 F.3d 289, 291 (7th Cir. 2009); 11 U.S.C. §362(a)(3), (a)(4), (a)(6). GM Financial violated the automatic stay when it repossessed the Charger.

Damages for stay violations are available only for "willful" violations. *Matter of Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009). Section 362(k)(1) provides the standard:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

This case turns on the precise definition of "willful."

In *Taggart v. Lorenzen*, the Supreme Court remarked that the law typically does not associate the word "willful" with strict liability. 587 U.S. 554, 565 (2019). Instead, the term "willful" is a word of many meanings "whose construction is often dependent on the context in which it appears." *Id*. The context of the automatic stay has led the courts of appeals to agree that a "willful" violation under §362(k) requires (1) knowledge that the debtor is in bankruptcy, and (2) an intentional act that violates the stay.[1] The Seventh Circuit is in accord: willfulness under §362(k) "entails actual knowledge that a bankruptcy is under way." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (2004); see also *Matter of Sterling*, 933 F.3d 828, 832 (7th Cir. 2019). A willful violation need not involve specific intent to violate the stay, though. *Radcliffe*, 563 F.3d at 631. "[I]t is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *Id*.

Section 362(k) does not impose strict liability. True, an entity does not need to know or intend that its action would violate the automatic stay. But that simply reflects the old legal adage that "ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 195–96 (1998). Entities that know of a bankruptcy filing cannot claim they do not understand its legal effect. That is not strict liability, though; actual knowledge of the bankruptcy case is required before a willful violation may occur. See *Randolph*, 368 F.3d at 730 (contrasting knowledge standard of 11 U.S.C. §362(k) with strict liability standard of 15 U.S.C. §1692e(2)(A)).

---

[1] *Fleet Mortgage Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990); *Cuffee v. Atlantic Business and Community Development Corp.*, 901 F.2d 325, 329 (3d Cir. 1990); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 293 (4th Cir. 1986); *Brown v. Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005); *Squire v. Stringer*, 820 F. App'x 429, 434 (6th Cir. 2020); *Knaus v. Concordia Lumber Co., Inc.*, 889 F.2d 773, 775 (8th Cir. 1989); *Goichman v. Bloom*, 875 F.2d 224, 227 (9th Cir. 1989); *Johnson v. Smith*, 501 F.3d 1163, 1172 (10th Cir. 2007); *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996).

The Supreme Court was told that §362(k) might entail strict liability in part because the bankruptcy court in *Taggart* had stated that the knowledge standard is "in effect" one of strict liability.[2] *In re Taggart*, 522 B.R. 627, 632 (Bankr. D. Or. 2014). That characterization is not quite accurate, though you can see why it feels that way. In general, (1) actual knowledge may be inferred from proper notice, (2) debtors are required to give proper notice, 11 U.S.C. §342, and (3) the BNC makes it very easy to prove that proper notice was sent. The universe of cases in which proper notice is given but actual knowledge is not proven is small indeed. To prove a willful violation of the stay, debtors routinely (and tacitly) rely upon a presumption that a creditor who receives proper notice has acquired actual knowledge. Once knowledge is established, all the debtor must prove is an intentional act, which makes the standard feel "akin to" strict liability. *Matter of Sterling*, 140 F.4th 924, 931 n.1 (7th Cir. 2025).

The presumption of knowledge is just that, though: a presumption. It can be rebutted. Consider the traditional presumption that a properly mailed letter was received. *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009). That principle has been extended to electronic transmissions, including faxes and emails. *Id.* at 476–77. It logically applies to EDI transmissions, too; the fact that a BNC notice was transmitted through EDI provides a rebuttable presumption both that the notice was received and that the recipient thereby acquired actual knowledge of the bankruptcy filing. But there will be occasions when a proper notice does not end up providing the intended recipient with actual knowledge of the information transmitted. See*, e.g.*, *In re Haan*, 93 B.R. 439, 441 (Bankr. W.D.N.C. 1988) (finding no sanctionable violation when creditor had no notice of bankruptcy due to "remarkable mistake in the mail"); see also *Irvin v. Nationwide Credit and Collection, Inc.*, No. 18 C 2945, 2019 WL 4450503, at **1, 3 (N.D. Ill. 2019) (finding apparently successful fax transmission did not necessarily establish actual knowledge). The focus of §362(k) is the creditor's awareness of the bankruptcy case, see *Radcliffe*, 563 F.3d at 631, not the debtor's compliance with notice obligations, even if in 99.9% of cases the latter will lead to the former.

**A**

This is the rare case in which the presumption of knowledge has been rebutted. GM Financial did not have actual knowledge of Varner's bankruptcy case despite her

---

[2] Parties supporting the respondent creditor seized on the bogeyman of "strict liability" to convince the Court to uphold a more demanding standard for violations of the discharge injunction, and it worked. Resp. Br., at 9, 39 (Mar. 21, 2019); Br. of Amici State of California, *et al.*, at 9, 12–17 (Mar. 28, 2019); Br. of Amicus Nat'l Creditors Bar Ass'n, at 4, 5, 7, 11 (Mar. 28, 2019); all filed in *Taggart v. Lorenzen*, No. 18-489 (U.S.).

proper notice. A corporation has actual knowledge of a bankruptcy case if knowledge would be imputed to the corporation under principles of agency law. See *Sterling*, 933 F.3d at 833–35 (7th Cir. 2019), citing Restatement (Third) of Agency §§5.03, 7.04 (2006). Corporations like GM Financial cannot "know" like an individual "knows." *United States v. One Parcel of Land Located at 7326 Highway 45 North*, 965 F.2d 311, 316 (7th Cir. 1992). They instead "know" what their agents know; each agent's knowledge is generally imputed to the corporation. *Dana Container, Inc. v. Sec'y of Labor*, 847 F.3d 495, 499 (7th Cir. 2017); see also *United States v. Dish Network, L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020).

The Restatement distinguishes between notice and knowledge. A person (including a corporation, §1.04(5)) has *notice* of a fact if the person *knows* the fact, has reason to know the fact, has received an effective notification of the fact, *or* should know the fact to fulfill a duty owed to another person. Restatement (Third) of Agency §1.04(4). Notice is effective even if it is not received by an individual, "as when a person has designated a computerized mechanism to receive notice." *Id.* §1.04 cmt. d. The BNC's transmission to Phin therefore provided GM Financial with effective notice of the bankruptcy case. But notice is not the same thing as knowledge; the former is a more inclusive term than the latter. *Id.* For example, ratification "requires that the principal have actual knowledge of material facts, not notice as defined in §1.04(4)." *Id.* §4.06. The same distinction is present here. Willfulness entails actual knowledge of the bankruptcy filing, not just notice thereof.

Again, corporations "know" things based upon what their agents know. Phin "read" the notice, so one could say that Phin "knew" that Varner had filed a bankruptcy case. A computer program, though, cannot be an agent. Restatement §1.04 cmt. e. It is instead an instrumentality of the person who uses it. *Id.* You can imagine other examples where an instrumentality's failure may preclude actual knowledge:

- Notice is properly mailed to a large business, but the letter gets stuck in the sorting machine in the mail room and is only discovered after the stay violation has occurred.
- Notice is properly faxed, but the office fax machine malfunctions and prints an illegible copy of the notice.
- Notice is properly emailed, but a glitch in the company's firewall rejects the message without alerting the sender or intended recipient.

Although each of those instrumentalities "knew" of the notice, to the extent that machines can "know" anything, that "knowledge" is not (presently) imputed to a corporation. See Mbilike M. Mwafulirwa, *The Automation Paradox*, 59 Tulsa L. Rev. 361,

407–08 (2024). Before GM Financial repossessed Varner's car, no agent of GM Financial knew of Varner's bankruptcy filing, so GM Financial did not know of the filing either.

**B**

GM Financial did acquire actual knowledge of the bankruptcy late in the afternoon on Wednesday, June 17, 2026, when Varner's attorney contacted customer service. A creditor has an affirmative duty to fix a technical violation of the stay without unreasonable delay once it acquires actual knowledge of the bankruptcy. *In re Will*, 303 B.R. 357, 365 (Bankr. N.D. Ill. 2003). The delay here was not unreasonable, though. The bankruptcy department at GM Financial repeatedly contacted the towing company to return the car beginning on Thursday morning, and the car was returned before the Court's intervention was needed. See *In re Frasier*, 613 B.R. 271, 276 (Bankr. W.D. Wis. 2020) (no willful violation when creditor remedied technical stay violation within two days); contrast with, *e.g.*, *In re Houck*, 597 B.R. 820, 834–35 (Bankr. W.D.N.C. 2019) (creditor decided to "wait and see" rather than rectify violation); *In re Witham*, 579 B.R. 787, 793 (Bankr. E.D. Ky. 2017) (creditor refused to refund wrongful postpetition debits); *Will*, 303 B.R. at 366 (creditor knew of bankruptcy in January but did not return car until April); *In re Skaggs*, No. 96-72313, 1996 WL 33406652, at *1 (Bankr. C.D. Ill. 1996) (creditor ignored request to return car after learning of bankruptcy); *In re Smith*, 180 B.R. 311, 319–20 (Bankr. N.D. Ga. 1995) (creditor learned of bankruptcy in October but failed to act to vacate state court order of contempt, leading to debtor's arrest in November).

Varner argues that GM Financial did not act with enough haste once it learned of the stay violation. She points out that it filed a proof of claim on Thursday morning and contends that GM Financial prioritized filing the proof of claim over returning the car. The evidence does not support that inference. As soon as the bankruptcy department at GM Financial was alerted to the situation on Thursday morning, it simultaneously sought to (1) return the car and (2) protect its rights in bankruptcy. Any proof of claim needed to be filed in this case by Monday, June 22, and Friday, June 19, was a federal holiday. GM Financial had to act quickly because lack of actual knowledge is not a reason to extend the claims bar date. See Fed. R. Bankr. P. 3002(c)(7) (permitting extension only if *notice* was insufficient, which it was not here). That GM Financial's representative who filed the proof of claim acted with more alacrity than its tow-truck driver does not make its actions any less reasonable.

GM Financial acted reasonably when it learned of the bankruptcy case filing. It was not a perfect response, because the towing company was unwilling to or could not prioritize the return of the car over its already scheduled work. GM Financial apparently lacked the ability to facilitate a same-day return of the car by means other

than repeatedly telling the towing company to return the car. This is not a case where the creditor intentionally failed to take actions to rectify the stay violation, though. The delay here was not delay for delay's sake or, worse, delay deliberately created to retaliate against the debtor for filing a bankruptcy petition. Cf. *Portis v. City of Chicago*, 613 F.3d 702, 705 (7th Cir. 2010). GM Financial actively tried to return the car from Thursday morning to Friday afternoon. The delay in returning the car does not support a finding that GM Financial willfully violated the stay.

**C**

GM Financial undoubtedly injured Varner and the estate by wrongfully repossessing the car. Not holding it liable for the violation that was caused by its own oversight in automation strikes me as inequitable. Nevertheless, the Bankruptcy Code does not give me discretion to impose monetary sanctions based upon whatever criteria I deem appropriate. *Law v. Siegel*, 571 U.S. 415, 423 (2014). Section 362(k) authorizes sanctions only for a willful violation of the automatic stay. GM Financial did not actually know that Varner was in bankruptcy before repossessing her car. Once it became aware of that fact, it acted reasonably to rectify its violation of the automatic stay. The violation was not willful.

The motion for sanctions is DENIED.

# # #